IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED
AUG 15 2006
U.S. DISTRICT COURT
CLARKSBURG, WV 26301

**LELAND E. WEGENER, JR.,**

**Petitioner,**

**v.** **Civil Action No. 2:06cv26**
**(Judge Maxwell)**

**DOMINIC A. GUTIERREZ,**

**Respondent.**

**OPINION/REPORT AND RECOMMENDATION**

On February 27, 2006, the *pro se* petitioner filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241 in which he challenges the results of a disciplinary hearing and his subsequent removal from the Bureau of Prisons ("BOP") Residential Drug Abuse Program ("RDAP"). On April 18, 2006, the respondent was directed to file a response to the petition. The respondent did so on April 27, 2006. On June 26, 2006, petitioner filed a reply to the respondent's response and on June 28, 2006, petitioner filed an Addendum to his reply. On August 14, 2006, the respondent filed exhibits J, K, and L, which were missing from his response to the Court's show cause Order. Accordingly, this matter, pending before the undersigned for Report and Recommendation pursuant to LR PL P 83.09, is ripe for review.

**I. Factual and Procedural History**

On February 23, 2004, petitioner was sentenced by the United States District Court for the Eastern District of Michigan to 37 months imprisonment for bank fraud. On April 10, 2004, petitioner was received at the Morgantown Federal Correctional Institution ("FCI-Morgantown"). While at FCI-Morgantown, petitioner completed the 500-hour residential drug treatment program for his marijuana and gambling addictions. Upon completion of the residential portion of the

program, petitioner was given an effective halfway house date of June 20, 2005 and a release date of December 16, 2005.

On June 20, 2005, petitioner arrived at the Arele Center in Saginaw, Michigan, to begin the halfway house portion of the program. As a resident, petitioner was gainfully employed, received satisfactory reports from the halfway house, and had follow-up counseling for his addictions. On August 25, 2005, petitioner gave a urine sample for routine drug testing. On September 6, 2005, petitioner received incident report #1385347 because his sample tested positive for morphine. Petitioner asserted that he did not and had never used morphine. Petitioner offered to pay for a more comprehensive test of his blood and hair, as well as a polygraph test, to prove his innocence.

Petitioner requested the additional testing on the date he received the incident report, on September 9, 2005, at his initial hearing, and in letters, e-mails, and phone calls after he was found guilty of the charge. Each of the petitioner's requests was denied.[1] On October 13, 2005, petitioner was informed that due to the guilty finding, he is no longer entitled to early release under § 3621 and that his new release date is January 21, 2007.

Petitioner appealed the guilty finding through the BOP's administrative remedy process. In response to his regional remedy, the Regional Director determined that petitioner was challenging his disciplinary hearing on the grounds that the medication he took could result in a false positive, that the chain of custody for his urinalysis was not handled properly, that during his hearing the hearing officer denied petitioner the right to call witnesses, and that his staff

---

[1] Prison officials are not required to make the reasons for denying an inmate witnesses or documentary evidence a part of the record at disciplinary hearings. Ponte v. Real, 471 U.S. 491 (1985).

representative neglected his duties. In response to petitioners' claims, the Regional Director found that petitioner was provided all the process that was due, that the chain of custody of petitioners' urinalysis was handled in accordance with procedure, that the medication petitioner was taking at the time of the test would not have resulted in a false positive, that petitioner had failed to raise the issue of his ineffective representative at the hearing, and that petitioner did not request witnesses on his behalf at the hearing. Therefore, petitioners' appeal was denied. Accordingly, Petitioner filed an appeal to the Central Office which was also denied.

## II. Claims of the Petition

In the petition, the petitioner asserts the following grounds for relief:

(1) his disciplinary proceeding violated his right to due process, equal protection and procedural fairness by not allowing petitioner the opportunity to obtain and provide proof and documentary evidence to support his claim of innocence;

(2) the BOP unlawfully revoked his good time credits ("GTC" or "GCT");

(3) the BOP unlawfully revoked his 3621E status and one-year early release; and

(4) the BOP unlawfully changed the DHO's sanctions and new sentence computation.

As relief, petitioner requests the right to prove his innocence, reinstatement of the lost GTC, reinstatement of his 3621E status and release from prison as of his original 3621E release date, expungement of said incident report, and damages for unlawful incarceration, loss of income, and distress to family.

## III. The Respondent's Response

In response to the petition, the respondent asserts that petitioner received all the process he was due at his disciplinary hearing and that the petition should be dismissed and summary

judgment entered on all counts. In support of this request, the respondent argues that on August 25, 2005, petitioner provided a urine sample to a staff member at the Arete Center for routine drug testing. Petitioner signed a Chain of Custody form certifying that the specimen was his own and that he provided it to the collector. See Missing Exhibits (dckt. 13) at Att. L. Moreover, petitioner certified that the specimen was sealed in his presence and that it had been labeled correctly. Id.

On August 29, 2005, the Redwood Toxicology Lab in Santa Rosa, California, received petitioners' urine specimen. See Respondents' Response (dckt. 9), Ex. 1 at Att. D. On August 30, 2005, the lab issued a report stating that an initial test of petitioners' sample revealed the presence of opiates. Id. The preliminary test was confirmed using the GC/MS testing method and the second test determined the opiate to be morphine. Id. The laboratory report was received by the Arete Center on September 6, 2005.

That same day, the Center prepared an incident report charging petitioner with a violation of Code 112, use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the inmate by medical staff. See Respondents' Response (dckt. 9), Ex. 1 at Att. E. The report was delivered to petitioner at 9:00 p.m. that night. Id. Petitioner also received a Notice of Center Discipline Committee Hearing ("CDC hearing"). Id. at Att. F. Petitioners' disciplinary hearing was scheduled for September 9, 2005, at 10:00 a.m. Id. On the form, petitioner elected to have a staff representative at the hearing, but did not select any witnesses to appear on his behalf. Id. Petitioner was given notice of his rights and acknowledged that he was advised of said rights. Id.

At his disciplinary hearing on September 9, 2005, petitioner was found guilty of violating Code 112 and was recommended for a disciplinary transfer. See Respondents' Response (dckt.

9), Ex. 1 at Att. G. In finding petitioner guilty of the charge, the hearing officer relied upon the chain of custody form; the copy of the lab report; a list of the medications petitioner was taking at the time of the test, none of which tested positive for opiates before; a copy of petitioners' medication log sheet; a copy of the BOP's list of prohibited acts signed by the petitioner; and a copy of the Arete rules and regulations signed by petitioner. Id. A Disciplinary Hearing Officer (DHO) reviewed the recommendations on September 26, 2005, and sanctioned petitioner to disallowance of 41 days GCT and a disciplinary transfer. Id. Petitioner was transferred to FCI-Morgantown on December 13, 2005. Petitioners' appeals of his disciplinary hearing were denied.

In his response, the respondent asserts that it is undisputed that the petitioner received all the process he was due in his disciplinary proceedings. Specifically, the respondent asserts that petitioner was given written notice of the charges three days prior to his initial hearing, that he was given a written statement of the evidence relied upon and the reasons for taking the disciplinary action, that petitioner was offered the opportunity to call witnesses and offer documentary evidence, that he was afforded a non attorney staff representative at the hearing, and that the decision maker was fair and impartial. Further, the respondent asserts that petitioner's request for additional testing is not afforded constitutional protection. Moreover, the respondent asserts that such testing was unnecessary because none of the medications petitioner was taking at the time of the drug test would have resulted in a false positive.

Additionally, the respondent argues that even if petitioner were denied due process, he must show that this denial was prejudicial before being entitled to relief. The respondent argues that petitioner cannot make such a showing.

Finally, the respondent argues that because there was some evidence to support the CDC's finding, the court should not overturn that decision. The respondent asserts that the evidence relied upon: the chain of custody form, the lab report, a copy of Arete's regulations signed by the petitioner, and a copy of petitioners' medication log, clearly show some evidence to support the conclusion of the CDC and DHO.

## IV. Petitioner's Reply and Addendum

In his reply to the respondent's response, the petitioner argues that although a confirmation test was done, there is a "margin for error levels in opiates 'basically to accommodate such items as poppy seeds and so forth.' Errors can be made and 'confirmations do not confirm that a screen is correct.'" Reply at 1. Moreover, petitioner argues that there are tests that can conclusively determine if a screening resulted in a false positive. In this case, petitioner requested such testing, but was refused. Petitioner asserts that the BOP's refusal to allow him the only testing that could possibly prove his innocence was a violation of his constitutional rights. Additionally, petitioner argues that any action taken to grant or deny his requests should have been made in the record and supported by explanation. Petitioner asserts that the failure of the BOP to do so was an abuse of discretion that subjects the BOP to civil liability.

In his Addendum, petitioner asserts that his case has merit and that if given the opportunity, he can prove that the actions of the BOP were arbitrary and an abuse of discretion. Further, petitioner asserts that if given the opportunity, he can also show that he was prejudiced by the actions of the BOP and that he is entitled to relief. Moreover, petitioner asserts that he knows another inmate who was incarcerated at Arete House and who tested positive for

morphine. However, through an attorney, that inmate was able to get a hair test, was released, and had his incident report expunged. Petitioner also acknowledges that he cannot prove the test wrong because all of his efforts to do so were denied.

## V. Analysis

### A. Grounds One and Two - Disciplinary Hearing and Revocation of GCT

Prison disciplinary proceedings are not part of a criminal prosecution, therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). However, inmates are entitled to some due process protections. Id. Those protections include: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; the ability to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety; and a written explanation of the evidence relied on and reasons for disciplinary action. Id. On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel. Id at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445 (1985).

In this case, petitioner argues that his due process rights were violated during a prison disciplinary proceeding that resulted in a loss of GTC. Thus, petitioners' claim is properly raised under 28 U.S.C. § 2241. See Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (a federal prisoner "has a constitutionally protected liberty interest in good time credit"). Moreover,

petitioner asserts that although the lab analysis of his specimen detected the presence of opiates, he did not take morphine. When petitioner received his copy of the incident report he did not request witnesses because there were none. However, he did assert his innocence and requested additional and more comprehensive testing of blood and hair samples because, as petitioner asserts, that was the only means by which he could prove his innocence. Petitioner also requested a polygraph examination. Petitioner stated that he would pay for the tests at his own expense, but his requests for additional testing were refused.

At the initial hearing, petitioner did not present witnesses or any documentary evidence in support of his claim of innocence. Petitioner did, however, again request that additional testing be done at his own expense. Petitioners' request was refused and he was found guilty based mainly on the chain of custody form, the lab report, and his medication log. After being found guilty of the charge, petitioner continued to assert his innocence and request additional testing. All of petitioners' requests were denied. During the appeals process, petitioner was advised that additional testing was not necessary because the medications he was taking at the time of the test would not have produced a false positive. Because the basic facts are not disputed, the only issue in this case is whether the BOP's failure to allow the petitioner the opportunity to obtain the additional testing was a violation of Wolff and petitioner's due process rights.[2]

---

[2] The BOP's policies on inmate discipline at a UDC hearing mirror the Supreme Court's decisions in Wolff and Hill. Pursuant to 28 C.F.R. § 541.15(a), the BOP is required to give an inmate a copy of the written charges against him within 24 hours of staff becoming aware of a violation. Each inmate is then entitled to an initial hearing within three work days from the day staff became aware of the violation, not including the day of the violation. § 541.15(b). The inmate is entitled to be present at the initial hearing, however, a hearing may he conducted without the presence of the inmate in certain circumstances. § 541.15 (c). "The inmate is entitled to make a statement and to present documentary evidence in the inmate's own behalf." § 541.15(d). At the initial hearing, the UDC shall consider all the evidence and make a decision based on at least some facts. § 541.15(f). If there is conflicting evidence, the UDC's decision must be based on the greater weight of the evidence. Id. The UDC shall give the

Under Wolff, the petitioner must have the ability to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety. "Wolff does not, however, guarantee prisoners the unfettered right to call any witness or present any evidence they wish regardless of its relevance or necessity." Piggie v. McBride, 277 F.3d 922, 924 (7th Cir. 2002); see also Seggara v. McDade 706 F. 2d 1301 (4th Cir. 1983). In fact, the Supreme Court has stated that due process does not require evidence that "logically preclude[s] any conclusion but the one reached by the disciplinary board." Superintendent v. Hill, 472 U.S. at 457.

In a similar case, the Eighth Circuit Court of Appeals found that although inmates are allowed to present a defense at a disciplinary hearing, they are not entitled to have confirmatory testing done. See Spence v. Farrier, 807 F.2d 753 (8th Cir. 1986). In so deciding, the Eighth Circuit reasoned that allowing inmates to routinely challenge the reliability of drug tests "would seriously interfere with the institutional goal of drug deterrence and prompt resolution of drug related infractions." Id. at 756. Moreover, although drug tests are not 100% reliable, "the margin of error is insignificant in light of institutional goals" and prison officials should not be required to provide "all possible procedural safeguards against erroneous deprivation of liberty when utilizing results of scientific testing devices in accusatory proceedings." Id. Other Courts to address this issue have made similar conclusions.[3]

---

inmate a written copy of its decision. Id. If the charges are serious and warrant more than minor sanctions, the charges shall be referred to a DHO for final disposition. § 541.15(h). See also Program Statement 5270.07.

[3] See Peranzo v. Coughlin, 850 F.2d 125 (2d Cir. 1988) (urinalysis drug test results may be relied upon as sufficient evidence in prison disciplinary proceedings); Miller v. Moran, 1992 WL 119131 (D.R.I. May 6, 1992) ( inmates not entitled to alternative drug testing methods which could be used at a disciplinary hearing to exculpate them); Batista v. Goord, 2005 WL 2179420 (N.D.N.Y. Aug. 28 2005) (inmate has no due process right to have substance retested at an outside laboratory) (citing Basil v. D.C. Dept. of Corr., 89-CV-1231, 1990 U.S. Dist. LEXIS 2951, at *9-10 (D.D.C. March 19, 1990) ("Although

Here, it is undisputed that petitioner received all the necessary due process protections enumerated in Wolff. Moreover, the positive urinalysis in this case provided "some evidence" to support the guilty finding as required by Hill and the clear weight of authority shows that petitioner was not entitled to additional testing. Therefore, the undersigned concludes that the petitioner's due process rights were not violated when the BOP refused to allow the additional testing and petitioners' good time credits were not unlawfully revoked. Thus, grounds one and two should be denied.

B. Ground Three - RDAP Program

The Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA) amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). The Act is applicable to persons convicted of a "nonviolent offense" and allows that BOP to reduce a prisoner's sentence by up to one-year as an incentive for the successful completion of the treatment program. See 8 U.S.C. § 3621(e)(2)(B); see also 28 C.F.R. §550.58. However, "[w]hile eligibility for early release under §3621(e)(2)(B) is open to all prisoners who meet the statutory requirements, the statute expressly vests the Bureau of Prisons with broad discretion to grant or deny sentence reductions to eligible prisoners. See 18

---

the consequences stemming from plaintiffs' disciplinary action based on what may have been erroneous drug test results are unfortunate, there is simply no constitutional guarantee that all executive decision making must comply with standards that assure error-free determinations."); DeLeon v. Dretke, 2006 WL 1281078 (S.D.Tex. May 4, 2006) (positive urinalysis test sufficient to meet "some evidence" standard); Anderson v. McKune, 23 Kan.App.2d 803, 937 P.2d 16 (1997) (due process does not require that prison officials allow an inmate to get an independent drug test to prove his innocence); see also Baxter v. Palmigiano, 425 U.S. 308 (1976) (ordinarily the right to present evidence is basic to a fair trial, but an inmate's right to present evidence is necessarily circumscribed by the penological need to provide swift discipline).

U.S.C. § 3621(e)(2)(B) ("the period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may be reduced* by the Bureau of Prisons") (emphasis added)." Pelissero v. Thompson, 170 F. 3d 442, 444 (4th Cir. 1999).

Here, petitioner asserts that his 3621E status was revoked in violation of his right to due process and equal protection. However, in order to establish a violation of his due process rights, petitioner must establish that he was deprived of a cognizable liberty interest. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). There is no protectible liberty interest in early release under § 3621(e). Orr v. Hawk, 156 F.3d 651, 654 (6th Cir. 1998); Fristoe v. R. G. Thompson, 144 F.3d 627, 630 (10th Cir. 1998); Cook v. Wiley, 208 F.3d 1314, 1322 (11th Cir. 2000); Piccolo v. Lansing, 939 F. Supp. 319, 321 (D.N.J. 1996); Fonner v. Thompson, 955 F.Supp. 638, 642 (N.D.W.Va. 1997); Egan v. Hawk, 983 F.Supp. 858 (D.Minn. 1997); Ramos v. Gilkey, 1997 WL 201566 *2 (N.D.Ill. April 17, 1997); see also O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991) (a statute that creates only a hope about a future discretionary decision by prison administrators is too speculative to create a liberty interest). Accordingly, petitioners' due process rights were not violated when the BOP revoked his 3621E status and petitioner is not entitled to have his eligibility for the one-year sentence reduction reinstated.

Neither did the BOP violate the equal protection clause by revoking the petitioner's 3621E status. To be successful on an equal protection claim, the plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level

of scrutiny." Id. In this case, petitioner states only that the BOP violated the equal protection clause by revoking his one-year early release eligibility. Petitioner does not assert that he has been treated differently from other similarly situated inmates or that his "unequal" treatment was the result of intentional discrimination. Thus, the petitioner's conclusory and unsupported statement is insufficient to state an equal protection claim and he is not entitled to have his 3621E eligibility reinstated for this reason either. Accordingly, ground three should be denied.

C. Ground Four - Additional Sanctions

In this ground, the petitioner asserts that the BOP unlawfully changed the DHO's sanctions and new sentence computation. In support of this claim, petitioner states that the DHO sanctioned petitioner to 41 days loss of GCT and a disciplinary transfer. Petitioner asserts that DHO sanctions and findings are final with the exception of the administrative appeals process, which cannot add sanctions. However, on October 11, 2005, the Detroit Office of the BOP further sanctioned petitioner by revoking his 3621E status.

The respondent asserts that the revocation of petitioners' 3621E was not a disciplinary sanction, but rather, a condition of participation in the RDAP program. Therefore, the DHO's sanctions were not unlawfully changed. The undersigned agrees.

On June 3, 2004, petitioner signed an agreement to participate in the RDAP. See Respondents' Response, Ex. 1 at Att. C. As a condition of his participation, petitioner acknowledged that he was informed, and understood, that if he was found guilty of using drugs during his participation in the program, he would be expelled for the failure to comply with the program's rules and regulations. Id. After he was found guilty of Code 112, petitioner received disciplinary sanctions of a loss of GCT and a disciplinary transfer. This finding was never

changed or altered. Instead, the revocation of petitioners' 3621E status was a separate and distinct consequence of the petitioner's failure to comply with the rules and regulations of the program. Accordingly, ground four is without merit and should be denied.

**VI. Recommendation**

Based on the foregoing, the undersigned recommends that the petitioner's § 2241 petition be DENIED and DISMISSED with prejudice.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying those portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner and counsel of record.

DATED: August 15, 2006.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE